QUESTION:
Does the Department of General Services, Division of Motor Pool, pursuant to the provisions of part II, Ch. 287, F. S., as read in conjunction with Ch. 215, F. S., have the authority to collect dividends received as the administering state agency under the terms of the annual state contract for airport rental car services and deposit said dividends in the Motor Vehicle Operating Trust Fund, to be utilized for payment of the division's administrative expenditures?
SUMMARY:
Dividends received by the Department of General Services, Division of Motor Pool, as the administering state agency under the terms of the annual state contract for rental vehicles must be deposited in the State Treasury within or to the credit of the General Revenue Fund, pursuant to the provisions of ss. 215.31 and 215.32, F. S., and cannot be properly deposited in or credited to the Motor Vehicle Operating Trust Fund which was established for the purpose of segregating moneys received by the division from other state agencies as payment for the utilization of the Division of Motor Pool's aircraft and motor vehicle pools as authorized by s.287.16, F. S.
This question is answered in the negative.
Your predecessor's letter of inquiry and accompanying bidding or proposal and specifications documents indicate that the Division of Purchasing of the Department of General Services negotiated a 1-year state purchasing agreement, on a competitive bid basis, with two 1-year successive renewal options, under which state agencies are required to purchase (and all political subdivisions of the state may purchase) airport rental automobile services at major airports and cities within the state where the successful bidder provides such rental services. The successful bid and agreement was approved and the contract for the services was awarded the successful bidder by the Governor and Cabinet sitting as the head of the Department of General Services on June 1, 1976, with the effective date of such contract being July 1, 1976. The purchasing contract provides, among other things, for the payment of certain rate discounts by the vendor of the rental services, which the state has a reserved right under the contract to apply to direct quarterly or monthly dividend payments on gross rentals payable to the administering state activity or apply to a combination of counter discount and dividend payments, among other options. According to the letter of inquiry, the Division of Motor Pool is responsible for administering the annual purchasing contract for airport rental automobile services, i.e., the division is `the administering state activity' under such contract to whom the aforesaid dividends are payable.
Your predecessor expressed the view that under the language of s.287.16(4) and (9), F. S., the Division of Motor Pool is empowered to utilize the aforementioned dividend payments for defraying the administrative or operating expenses of the division.
No state agency may purchase, lease, or acquire any motor vehicle without approval first being obtained from the division, except for the lease for casual use of motor vehicles, and all purchases are required to be made in compliance with the rules and regulations of the Division of Purchasing. Section 287.15, F. S. The Division of Motor Pool is empowered to establish and operate central facilities for the acquisition, disposal, operation, maintenance, repair, storage, supervision, control, and regulation of all state-owned or leased motor vehicles and to operate state facilities for those purposes. Section 287.16(1), F. S. Such acquisition may be by purchase, lease, or loan or in any other legal manner. Section 287.16(1). Upon requisition and showing of need by a state agency, the division may assign motor vehicles on a temporary basis (for a period of up to 1 month) or permanent basis (1 month up to 1 full year) to any state agency. Section287.16(3), F. S. It may also allocate and charge fees to any state agency to which motor vehicles are furnished, based upon reasonable criteria. Section 287.16(4), F. S. The division is further empowered to adopt and enforce rules and regulations for the efficient and safe use, operation, maintenance, repair, and replacement of all state-owned or leased motor vehicles and may delegate to the respective heads of state agencies to which motor vehicles are assigned the duty of enforcing the rules and regulations adopted by the division. Section 287.16(5), F. S. Pursuant to s. 287.16(9), F. S., the division has the duty:
 (9) To establish and operate central facilities to determine the mode of transportation to be used by state employees traveling on official state business and to schedule and coordinate use of state-owned or leased aircraft and passenger-carrying vehicles to assure maximum utilization of state aircraft, motor vehicles, and employee time by assuring that employees travel by the most practical and economical mode of travel. The division shall consider the number of employees making the trip to the same location, the most efficient and economical means of travel considering time of employee, transportation cost and subsistence required, the urgency of the trip, and the nature and purpose of the trip.
It is readily apparent from a review of the powers and duties of the Division of Motor Pool, as set out in s. 287.16, F. S., that the sole authority for the division to allocate and charge fees to other state agencies is found in s. 287.16(4). Said authority is clearly limited to the charging or fixing and the allocation of fees by the division to state agencies to which aircraft or motor vehicles are furnished by the division and in no way pertains to or authorizes the division to utilize for its operating expenses the discounts or dividends paid to the state, notwithstanding the fact that said moneys are received by the division. The operating expenses or administrative expenses of the division for fiscal year 1976-1977 are provided for and are payable from Item 485, s. 1, Ch. 76-285, Laws of Florida, or, if data processing services are involved, from Item 487, s. 1, Ch. 76-285. The moneys in said items are appropriated from the Motor Vehicle Operating Trust Fund to the Division of Motor Pool for fiscal year 1976-1977, to be expended accordingly, and are in lieu of all moneys appropriated for said purposes in other statutory provisions. Section 1, Ch.76-285.
Pursuant to the provisions of s. 287.16(9), F. S., quoted above, the division has the responsibility of operating central facilities to determine the mode or method of transportation to be used by state employees and scheduling and coordinating the use of state-owned or leased passenger carrying vehicles, i.e., in connection with the use of state-owned or leased motor vehicles, watercraft, or airplanes which are under the control and supervision of the division. This authority clearly does not pertain to rental automobiles owned or leased and under the control of private leasing or rental companies which are leased by state employees for casual use. Section 287.15, F. S. The rental of cars from established rental car firms (see s. 112.061(2)(h), F. S.) by authorized travelers is generally governed by the provisions of s. 112.061, F. S. Said rentals are authorized by the agency head of the particular state agency, s. 112.061(3), F. S. (see also s. 112.061(2)(g), (7)(c), and (8)(a)-(c), F. S.). It is clear that the division's duty or authority pursuant to s.287.16(9), F. S., does not relate to the appropriation of state moneys for the operating expenses of state agencies, nor does it pertain to discounts or dividends resulting from state contracts for services to be rendered by a private vendor or the utilization or the appropriation of such discounts or dividends by any state agency. Thus, s. 287.16(9) has no application to the subject matter of this inquiry or to revenues derived from these private rental service vendors. Reference to s. 13, Ch. 76-285, Laws of Florida, reflects a contrasting situation, in that therein the Legislature has specifically authorized the Department of General Services, Division of Building Construction and Property Management, to levy and assess an amount for the supervision of construction of fixed capital outlay projects on which that division serves as the owner-representative on behalf of the state, said amount to be transferred to the Architect's Incidental Trust Fund of said division from appropriate construction funds upon the award of construction contracts.
The Motor Vehicle Operating Trust Fund was apparently created by the Legislature, see Items 338, 339, 340, and 341, s. 1, Ch.70-95, Laws of Florida, the 1970 General Appropriations Act, and appropriations have since been made by the Legislature to the Division of Motor Pool for its operating expenses in that act and subsequent General Appropriations Acts, as well as from the General Revenue Fund. By way of comparison, it is noted that the Legislature established the Bureau of Aircraft Trust Fund through the enactment of s. 2, Ch. 72-207, Laws of Florida, s. 287.161(3), F. S., and these provisions relate specifically to the disposition of fees collected for aircraft travel by aircraft in the executive aircraft pool and deposited in that trust fund, requiring that any excess of fees on deposit at the end of each fiscal year shall be transferred to the General Revenue Fund unallocated. Item 341 in s. 1 of Ch. 70-95, Laws of Florida, transferred by lump sum appropriation $150,000 from the General Revenue Fund to the Motor Vehicle Operating Trust Fund, and a proviso appended thereto provided that it was the intent of the Legislature that the Bureau of Motor Vehicles and Watercraft be self-supporting to the extent possible from trust funds generated through operation of motorvehicle pools therein and that such trust funds be utilized prior to utilization of general revenue funds for operations of the Bureau of Motor Pools or motor pools therein. No money may be paid from the Motor Vehicle Operating Trust Fund or from the State Treasury except as appropriated and provided for by the annual General Appropriations Act or as otherwise provided by law. Section 1(c), Art. VII, State Const.; s. 215.31, F. S. Section215.31, F. S., stipulates that any revenue, including, but not limited to, licenses, fees, imposts, or exactions, collected or received under the authority of state laws by any state official or agency be promptly deposited in the State Treasury and credited to the appropriate fund as provided by law, and no money be paid from the State Treasury except as appropriated and provided by the annual General Appropriations Act or as otherwise provided by law. Other than the 1970 General Appropriations Act and subsequent successive appropriations acts, there is no existent law or laws specifically designating or providing for the Motor Vehicle Operating Trust Fund or segregating or allocating any moneys received by the state for the purposes of such fund; nor does there exist any law governing the receipt of moneys under the terms of the aforementioned purchasing agreement for airport rental car services or the use or disposition of such moneys. Cf. s. 215.37(2), F. S. Therefore, any such receipts of money by the Division of Motor Pool must be deposited in the State Treasury.
Section 215.32(1), F. S., requires all moneys received by the state to be deposited in the State Treasury unless specificallyprovided otherwise by law and deposited in and accounted for by the State Treasurer and the Department of Banking and Finance within the four designated funds. I am unaware of any law specifically authorizing the moneys received by the state as dividends under the annual airport rental car services contract to be deposited in any account or financial institution outside of the State Treasury. Cf. s. 240.095, F. S., relating to the deposit outside of the State Treasury of certain funds received by institutions or agencies in the State University System. Of the four funds denominated in s. 215.32, F. S., only the General Revenue Fund and the trust funds are relevant to or necessary to be considered by or for the purposes of this opinion. The source and use of the General Revenue Fund `consist of all moneys received by the state from every source whatsoever, except as provided (for the Trust Funds and the Working Capital Fund)' and such moneys are required to be expended pursuant to General Revenue Fund Appropriations Acts. Section 215.32(2)(a). The source and use of the trust funds `consist of moneys received by the state which under law or under trust agreement are segregated for a purpose authorized by law,' and the state agency receiving or collecting such moneys is responsible for their proper expenditure as provided by law. Section 215.32(2)(b)1. Section 215.32(2)(b)3. operates to appropriate all such moneys for the purpose for which they were received, to be expended in accordance with the law or trust agreement under which they were received, subject to other applicable laws relating to the deposit or expenditure of moneys in the State Treasury.
With respect to the dividend moneys which are the subject of this opinion, I am aware of no statutory authority to segregate said moneys for any purpose, and there is no extant trust agreement segregating such moneys for a purpose authorized by law or for any specific use or purpose authorized by law. Insofar as the Division of Motor Pool is concerned, part II of Ch. 287, F. S., does not expressly or by necessary implication authorize said division to use the dividend moneys for its operating expenses, does not prescribe any purposes for which such moneys are to be expended, and does not authorize or require such moneys to be deposited in the Motor Vehicle Operating Trust Fund or to be credited to that fund by the State Treasurer or Department of Banking and Finance. A review of ss. 215.37(2) and 287.161(3), F. S., and s. 13, Ch.76-285, Laws of Florida, is illustrative of specific authority to that effect having been vested in state agencies by the Legislature. The Legislature has been and is appropriating money for the division's operating expenses from the Motor Vehicle Operating Trust Fund in the annual General Appropriations Act, thus no trust agreement under s. 215.33(2)(b)1., F. S., is controlling the expenditure of the moneys in the trust fund, and s. 215.32(2)(b)3., F. S., does not operate to appropriate such moneys in such trust fund for any speific use or purpose for which received or any purpose authorized by law. Furthermore, part II of Ch. 287 and the prescribed duties and responsibilities of the division, especially s. 287.16(4) and (9), upon which the division relies in its inquiry, do not relate to car rental services to state agencies and employees or to the rental of such cars by authorized state travelers of the various state agencies. As has been previously stated, these activities must be authorized by the various agency heads and paid for by the various state agencies out of expense appropriations of the particular affected agency and are not authorized or paid for by the Division of Motor Pool.
Prepared by: Edwin J. Stacker Assistant Attorney General